ELIZABETH DROEGE, Respondent, v. FRANCIS W. DROEGE, Appellant.

St. Louis Court of Appeals, December 20, 1892.

1. **Husband and Wife**: ACTION FOR MAINTENANCE. A wife is not entitled to relief in an action by her against her husband for mainten ance, when she has left him without his consent and under circumstances which do not amount to an abandonment by him.

2. ————: CONSTRUCTIVE ABANDONMENT BY HUSBAND. *Held, arguendo*, that the wife is bound to follow the fortunes of her husband, and to live where he chooses, and in the style and manner which he may adopt; also, that, to justify an abandonment of the husband by the wife, his conduct towards her must have been such as would entitle her to a divorce.

*Appeal from the St. Louis City Circuit Court.*—HON· JACOB KLEIN, Judge.

REVERSED AND REMANDED (*with directions*).

*Smith P. Galt*, for appellant.

*Broadhead & Hezel*, for respondent.

Revised Statutes, section 6856, provides that the husband is liable to an action for maintenance in a case where, without good cause, he refuses or neglects to maintain or provide for his wife. A failure to properly provide for the wife, when the husband is able, constitutes "good cause." Where a wife lives apart from her husband with his consent, he is still bound to support her; and, if it be not shown that she has refused to return to him upon his request, she is entitled to a decree for maintenance. *Lindenschmidt v. Lindenschmidt*, 29 Mo. App. 295; *Dwyer v. Dwyer*, 26 Mo. App. 653.

THOMPSON, J.—This is a petition by a married woman against her husband, under section 6856 of the Revised Statutes, for maintenance for herself and two children of the marriage. The court made a decree requiring him to pay to the plaintiff the sum of $215 before a day named, and the sum of $40 on the first of each month thereafter until further order of the court, and that, in default of the payment of any of the said sums, execution issue therefor, and also for the costs. From this order defendant prosecutes an appeal to this court.

The petition states that the plaintiff is the lawful wife of the defendant, and was married to him at the city of St. Louis in the year 1875; that there were two children born of the marriage, one a boy, William, fifteen years old, and the other a girl, Mary, thirteen years old; that at all times since the marriage the plaintiff has demeaned herself and performed all the duties as defendant's wife; but that the defendant, regardless of his duties as the husband of plaintiff and as the father of said children, and without cause, did, on the ———— day of May, 1884, abandon his said wife and children, and has since then refused and neglected to maintain and provide for her or for the children, and refused to speak to or recognize them or any of them. The answer admits the marriage and the births of the children, as stated in the petition, and denies each and every allegation therein contained; and then avers that the plaintiff did, on or about the ———— day of May, 1884, desert and abandon the defendant, taking with her the children, and that she has ever since refused and neglected to live with him or to permit him the society of the children.

The evidence shows that, for a number of years after their marriage, the spouses lived together as husband and wife with the mother of the plaintiff, Mrs. Mehan,

first at St. Louis, next at a farm purchased by Mrs.
Mehan in Washington county, and again at the resi-
dence of Mrs. Mehan in St. Louis; that, in the year
1884, the defendant requested the plaintiff to set up a
separate housekeeping establishment instead of living
with the mother-in-law, to which the plaintiff refused to
consent. The parties were catholics, and the defendant
thereupon complained to the priest of her refusal to leave
her mother and live in a separate house, and the priest
went to her and advised her to follow him, which she
reluctantly did. For some time prior to this separation
from the mother-in-law, the defendant had been
employed in the Simmons Hardware Company, first at
$60 a month and afterwards at $1,000 a year, or $83.33
a month, and a bonus of $100 at the end of each six
months, making his total compensation at the rate of $100
a month in case of remaining with the company continu-
ously for either half of a year. His current payments
were made semi-monthly. When he received the first
semi-monthly payment of $30, he gave $20 of it to his
wife, and, when she discovered that he had given her
no more, she complained angrily, and he, thereupon,
gave her $5 more, and continued to give her $25 while
his salary thus remained at $60 a month. When the
increase in his salary took place, he gave her $30 every
two weeks. During each of these periods he expended
the remainder in clothing himself, paying his incidental
expenses, and discharging debts previously contracted
for his clothing and the like. This is his testimony.
The testimony of the plaintiff tends to show that he
gave her money in small sums, amounting, as she esti-
mated it, to about $25 a month. She claims that he
did not adequately support the family either in respect
of food or clothing. He, on the other hand, claims
that out of the sum which he gave his wife the family
were suitably provided for, and in this he is supported

by the testimony of Mrs. Freund, who occupied a portion of the house into which he and his family moved when they left the mother-in-law. Mrs. Freund testifies that the children were dressed better than her children, and that Mrs. Droege was dressed better than she dressed.

No serious charge of misconduct in his marital relations is attempted against the defendant, except that he was in the habit of staying out in the evening; and this charge comes from the testimony of the mother-in-law rather than from that of the wife. The wife testifies that she could not piece out a support for herself and children on the sums of money which he was giving her, but that her mother helped her out by giving her $2 or $3 a week. She testified that she complained to him of the inadequate support that he was giving his family, and told him that she intended to leave him and go back to her mother, and that he told her to do as she pleased. He, on the other hand, claims that he never knew anything about the purpose on her part to leave him, until he discovered that she had done so. The circumstances under which she left him are not in dispute. He went, according to his custom, to his daily employment at the Simmons Hardware Company, at seven o'clock in the morning of July 14, 1884. At that time he and his wife had been keeping house separately from the mother-in-law for about four months. On returning home at night he found that their rooms were stripped of everything, and that his wife and children were gone. The evidence shows that, when he left in the morning to go to his work, either the wife or the mother-in-law procured a wagon, and the wife assisted by the mother-in-law loaded everything there was in the house, including the defendant's clothing, and, having locked the door and delivered the key to Mrs. Freund, abandoned the

premises, and hauled the furniture away and deposited it in a vacant house which the mother-in-law had recently built. They seem to have done this on the expectation that the defendant would follow them. This he did not do,—not even for the purpose of recovering his clothing which they had carried off. He never held any further communication with them, nor they with him, with the exceptions which will be presently stated. He never solicited her to return nor did she ever offer to return. He never endeavored to retain possession of his children, and, consequently, she never had an opportunity to assent to or resist such an endeavor. He never contributed anything to their support, with the exception of paying the bills for medical services and medicines on an occasion when the little girl was sick. On this occasion, the little girl being quite sick, his wife wrote to him, informing him of the fact and telling him that if he desired to see her he could call. He did so, and remained in the sick room about half an hour. The testimony of both the spouses shows that their greeting and conversation were of the most cold and formal kind. On other occasions he saw his little boy; but either refused or neglected to speak to him. On one occasion the little boy went down to the store of the Simmons Hardware Company, where his father was employed, and the father, being busy, paid no attention to him, did not even speak to him, but turned and went away to his office. He is still employed by the Simmons Hardware Company at the aggregate salary of $1,200 a year, payable as already stated, and seems to be well regarded by his employers. During the seven years of separation between the spouses, which intervened between this desertion by the plaintiff and the bringing of this suit, she lived with her mother in the city of St. Louis, with the exception of one year when they resided in

California.   During three years of this time, Mrs. Mehan kept a grocery, but she and the plaintiff are at present supporting themselves and the two children of this marriage by keeping a boarding house.

The statute, under which the action is brought, and under which alone any right to the relief sought can be predicated, reads as follows:   "Sec. 6856.   When the husband, without good cause, shall abandon his wife, and refuse or neglect to maintain and provide for her, the circuit court, on her petition for that purpose, shall order and adjudge such support and maintenance to be provided and paid by the husband for the wife and her children, or any of them, by that marriage, out of his property, and for such time as the nature of the case and the circumstances of the parties shall require, and compel the husband to give security for such maintenance, and from time to time make such further orders touching the same as shall be just, and enforce such judgment by execution, sequestration of property, or by such other lawful means as are in accordance with the practice of the court; and, as long as said maintenance is continued, the husband shall not be charged with the wife's debts, contracted after the judgment for such maintenance."

We say that the petition is necessarily predicated upon the statute, because, although a husband is liable at common law for the support of his wife, unless her right to be supported by him has been forfeited by her misconduct, yet the only form in which this liability is worked out is by her procuring necessaries from third parties, who, thereby, acquire a right of action against him for the necessaries so furnished; and the same is the rule with reference to his liability to support his minor children.   We are of opinion that the evidence entirely fails to show the case, stated in this statute and alleged in the plaintiff's petition, of a husband, without

any cause, abandoning his wife, and refusing or neg-
lecting to maintain and provide for her. These
things,—the abandonment *and* the refusal or neglect to
maintain and provide for her,—are placed by the statute
in the conjunctive and not in the disjunctive, and,
therefore, both these conditions must concur in order
that she may sustain a petition under the statute. The
evidence in the present case not only fails to show that
he abandoned her, but it shows that she secretly aban-
doned him, and has never since offered to return to
him, unless regard can be had to the offer which she
made when testifying as a witness in this case. She
testified that she was willing to go and live with him,
"if he provides for his wife as he should." Her coun-
sel then asked: "Well, do you mean as he should, or
as he can?" She answered: "As he can." "*Q.* You
are willing to live with him, if he provides for his
family as well as he can with his earnings? *A.* Yes,
sir." Whether this action would entitle her to the
relief which she seeks, if made to him prior to the
commencement of this suit, or even in her petition, we
need not consider, because, on the well-settled rule of
procedure in this state, her right to relief must stand
or fall upon the condition of things existing at the time
of bringing her suit. We do not wish to intimate that
a husband, who has been abandoned by his wife, tak-
ing the children of the marriage with her, for a period
of eight years, without just cause, is bound to condone
her offense after the expiration of so long a time, upon
finding that she needs his support for herself and the
children.

There does not seem to be much occasion for a
further discussion of the evidence. We concede that,
if the husband, by his misconduct, had driven the wife
from the family residence, that would not have been an
abandonment on her part within the meaning of the

statute, but would have been an abandonment on his part. But there is no evidence which could justify such a conclusion. In fact, no serious attempt is made to exhibit misconduct on his part, except in the testimony of the mother-in-law, other than the failure adequately to support his wife and children. Mere non-support does not constitute such indignities as will justify the wife in abandoning her husband, though it may be conceded that non-support, when coupled with other circumstances, may. The wife is bound to follow the fortunes of her husband, and to live where he chooses to live and in the style and manner which he may adopt. *Messenger v. Messenger*, 56 Mo. 329; *Kaster v. Kaster*, 43 Mo. App. 115. The text-writers and judicial authorities, so far as we are acquainted with them, show that, in order to justify an abandonment of the husband by the wife, his conduct towards her must have been such as would constitute the foundation of an action on her part for a divorce. *Pierce v. Pierce*, 33 Iowa, 238; Bishop on Marriage, Divorce & Separation, sec. 1742. The only ground on which the plaintiff in this action justifies her abandonment of the defendant is non-support; and that ground is not only not made out by the evidence, but is negatived to some extent by her own testimony. This will appear from the following colloquium extracted from her cross-examination: "*Q.* Well, had you told him why you were going to leave him? *A.* Well, I told him I could not live that way.

"*Q.* The only reason you gave is that he did not furnish you with support in the style in which you thought you ought to live? *A.* Well, there was no style at all.

"*Q.* Well, style is a mere matter of comparison. *A.* There was no question of style at all; I only wanted support.

"*Q.* That was the reason why you were going to leave him, because he did not support you? *A.* Yes, sir; because he didn't support me.

"*Q.* You did leave? *A.* Yes, sir.

"*Q.* Your rent was paid? *A.* Yes, he paid the rent.

"*Q.* You had enough to eat? *A.* Well, yes, I had enough to eat.

"*Q.* ·About enough? *A.* Of course I wasn't starving.

"*Q.* And you had a place to sleep? *A.* Yes.

"*Q.* And wherewith to be clothed? *A.* Yes.

"*Q.* And so had the children? *A.* Well, our clothing didn't cost him very much.

"*Q.* Of course he didn't expect you to be extravagant? *A.* My mother saw that I wouldn't want for anything.

"·*Q.* And he had the same accommodations that you had? *A.* Yes, he came home when he felt like it."

While it is a rule in cases of conflicting evidence where the facts are, as in this case, tried by the court as in equity, that the appellate court will defer to the conclusions of the trial court, yet the evidence so clearly falls short of showing any justification on the part of the wife for deserting her husband as she did, and, hence, so clearly falls short of making out a case, under the allegations of her petition and the provisions of the statute, that we feel constrained to reverse the judgment, and remand the cause with directions to enter judgment in favor of the defendant dismissing the suit. Counsel for the plaintiff rest their right to an affirmance of the judgment upon the doctrine of this court announced *obiter* in the case of *Dwyer v. Dwyer*, 26 Mo. App. 653, which was a divorce case, and afterwards reaffirmed and applied in *Lindenschmidt*

*v. Lindenschmidt*, 29 Mo. App. 295, which was like this a suit under the statute by a wife for maintenance. That doctrine is· that, while a wife remains away from her husband's domicile with his consent, he is bound to support her. But that doctrine must be restrained to cases where the separation takes place by mutual consent, and is continued by mutual consent, which was the case of *Lindenschmidt v. Lindenschmidt*, or where, though it takes place through the wrong of one or both of the spouses, such wrong not being of the character which affords grounds for divorce, neither of them will consent to resume the marital cohabitation. What we said in the *Dwyer case* was this: "It is clear of all doubt on this record that the defendant [the wife] was induced to leave the home of the plaintiff on account of ill-treatment by him, and that from that day to this he has done nothing in the way of reparation, nothing which indicates on his part a willingness to have her return. On the contrary, it sufficiently appears that he is unwilling to have her return and resume the duties of a wife. She is, therefore, to be taken and deemed as remaining away from his home by his consent and desire, and this consent and this desire are, of themselves, a reasonable cause for her continuing to remain away." *Dwyer v. Dwyer*, 16 Mo. App. 427, 428. In the second case of *Dwyer v. Dwyer*, this court quoted and reaffirmed this language upon the evidence again before it as characterizing the circumstances under which the spouses had separated and continued to remain apart. This court then added, but, of course, speaking with reference to the facts then before it: "It is not doubted by any member of the court that, while a wife remains away from ·the husband's domicile, with his consent, under such circumstances, he is bound in law, to support her, and she has· power to charge him for nec-

essaries.'' 26 Mo. App. 653. We did not say that such a state of facts made a case for maintenance under the statute under which the present petition is prosecuted; and what we hold in the present case will not necessarily conclude the question, whether or not Mrs. Droege can charge her husband for necessaries for herself and children under the principles of the common law. As the wife is under coverture, no judgment can be rendered against her for costs. The judgment is reversed and remanded with directions to enter judgment for the defendant dismissing the suit. It is so ordered. All the judges concur.