FRANCIS W. DROEGE, Appellant, v. ELIZABETH DROEGE, Respondent.

St. Louis Court of Appeals, December 19, 1893.

Divorce: DESERTION. When a separation by a wife from her husband, though without justification, takes place with the tacit consent or connivance of the latter, it does not amount to desertion within the meaning of the law of divorce.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Smith P. Galt* for appellant.

The evidence shows that defendant absented herself from plaintiff without reasonable cause for the space of one whole year before the filing of his petition, and therefore the appellant is entitled to a decree of divorce. Bishop on Marriage and Divorce [Ed. 1891], sections 1742, 1217 and 1753; 5 American and English Encyclopedia of Law, p. 205, note 2; *Pierce v. Pierce,* 33 Iowa, 238; *Skean v. Skean,* 33 N. J. Eq.; *Messenger v. Messenger,* 56 Mo. 329; *Taylor v. Taylor,* 80 Iowa, 29;

*Van Dyke v. Van Dyke*, 135 Pa. St. 459; *Alkire v. Alkire*, 33 W. Va. 517.

*Broadhead & Hezel* for respondent.

The defendant did not absent herself from the plaintiff without reasonable cause; therefore plaintiff is not entitled to a divorce. *Lindenschmidt v. Lindenschmidt*, 29 Mo. App. 295; *Dwyer v. Dwyer*, 26 Mo. App. 653.

Biggs, J. — Action for divorce. The plaintiff alleged in his petition that, in July, 1884, the defendant, his wife, left their home without good and sufficient cause, and that since that time she had absented herself from him without a reasonable cause. The answer is a general denial. The circuit court, upon a hearing, dismissed the proceeding, and the plaintiff has brought the case here for review.

Desertion, in the law of divorce, "is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification either in the *consent* or the *wrongful conduct* of the other." 1 Bishop on Marriage and Divorce, section 1662. There is great diversity of opinion among judges as to what should be deemed an adequate excuse or provocation for separation. Some hold that the misconduct of the other party must be such as to entitle the party (who leaves the other) to a divorce. Others have regarded something less as sufficient, that is, where it is made to appear that the separation is the natural or probable result of irritating or vexatious conduct of the other party. The latter rule has been adopted in this state, where the defendant relies on the misconduct of the plaintiff as a *provocation merely* for the act of separation. *Gillinwaters v.*

*Gillinwaters*, 28 Mo. 60; *Owen v. Owen*, 48 Mo. App. 208. But, if the separation is with the assent or connivance of the other party, then there is no desertion. *Lea v. Lea*, 8 Allen, 418; *Crow v. Crow*, 23 Ala. 583; *Fulton v. Fulton*, 36 Miss. 517; *Marsh v. Marsh*, 14 N. J. Eq. 315.

We do not think that, even under the more liberal rule adopted in this state, the evidence of misconduct on the part of the plaintiff was sufficient to fully justify the defendant in abandoning her home. But our reading of the record has convinced us that the plaintiff was more anxious for a separation than the defendant, and that it took place by his tacit consent, connivance and desire, as his subsequent conduct, when coupled with the testimony of the defendant, conclusively shows.

The parties were married in 1875. The defendant's mother (Mrs. Meehan) was a widow, and the owner of some property The defendant was the only child. The young couple lived with Mrs. Meehan for three or four years after the marriage, paying no board, at which time the latter moved onto her farm in Washington county. During this time two children were born of the marriage. After Mrs. Meehan moved to her farm, the plaintiff and defendant kept house for two or three months, when the plaintiff failed in business. Being without employment or money, he moved his family to his mother-in-law's farm, and again took up his residence with her. In the fall of 1882 the farm was sold, and all parties returned to St. Louis. Mrs. Meehan bought a house, and the plaintiff and his family again installed themselves as part of her household. This continued until the spring of 1884, when Mrs. Meehan sold her house and informed the plaintiff that he must set up an establishment of his own. Up to this time the plaintiff had been married nearly nine

years, and during the time (excepting two or three months) he and his wife and their two children had lived on the bounty of Mrs. Meehan. He paid no board, and in no wise contributed to the household expenses, although, after his return to St. Louis, he had constant employment at a salary of from $60 to $90 a month.

After Mrs. Meehan had notified the plaintiff that he must provide another home for his family, he rented three rooms and commenced to keep house in April, 1884, and he so continued until July following, when his wife went back to live with her mother, taking the children and all the furniture.

The defendant testified that, during the time they kept house, the plaintiff failed to provide a sufficient amount of food for herself and children; that he remained away almost every evening until very late hours, sometimes not returning until two o'clock in the morning, and, when she asked where he had been, he answered that it was none of her business; that he habitually treated her coldly, and exhibited no affection for the children; that just before the separation she asked him to buy her a tonic which her physician had prescribed, and that he rudely pushed her aside, remarking that she did not need any medicine; that she often complained to him of his failure to sufficiently provide for her and the children, and of his discourteous treatment of her, and that she informed him on several occasions that, unless there was a change for the better, she would go back to live with her mother, and that he always replied that she was at liberty to go whenever she desired.

On the other hand the plaintiff testified that at the time he commenced to keep house he was receiving a monthly salary of $83 with a bonus of $100 at the end of each six months for faithful service; that for

each month he set apart $60 for family expenses, $30 of which went to his wife, $13 for rent, and the remainder ($17) for provisions and other supplies for the family; that he treated his wife well; that they had no trouble whatever; that she made no complaints; and that he was perfectly dumfounded, when he returned to his home one evening and found it deserted and dismantled, and his wife and children gone. But he confessed that he made no effort or even inquiries to find out whither they had gone, or why they had gone. He said that he was satisfied that they had gone to live with Mrs. Meehan, who had just moved into a new house which she had built. He also admitted that, a few months after the serparation, his wife sent for him to visit his daughter, who was sick; that he there met his wife, and that he did not then, or at any time during their long separation, ask his wife for an explanation of her conduct. He also confessed that during this time he had seen his children only four or five times, although they lived in St. Louis, and that he had never contributed anything towards their education or support.

The conduct of the plaintiff when he learned that his wife had gone, and subsequently, can not be made to harmonize with his statements that he had always treated his wife well; that he loved her and the children dearly; that she made no complaints; and that she had never threatened to leave him. The one is a palpable contradiction of the other, and this justified the trial court, and it warrants us, in adopting the statements of the wife as being substantially true. We think that he was fully advised of his wife's intentions, and that she acted with his tacit consent or connivance; for, in answer to her complaints of bad treatment and threats to leave him and go back to live with her mother in the event he did not treat her

better, he always assured her that she was at liberty to go whenever she was ready. He seemed to want to be rid of the burden of supporting his family, knowing full well that Mrs. Meehan could and would give them a better home than he could afford. His conduct cannot be explained in any other way.

It may be true, as we decided in an action brought by Mrs. Droege against her husband for maintenance (*Droege v. Droege*, 52 Mo. App. 84), that the circumstances attending the separation were not sufficient to make out a case of desertion on the part of the husband. That was one thing. But to hold that the act of separation was an act of desertion on the part of the wife, and that the plaintiff is an innocent and injured party is quite a different thing.

The judgment of the circuit court will be affirmed. All the judges concur.

### CONCURRING OPINION.

ROMBAUER, P. J.—It appears by the plaintiff's own evidence that his wife left him in July, 1884; that he knew that she had removed to her mother; that he never asked her to return, never interferred with her movements in any manner, never sought her society, or offered to make any provision whatever for her. The present suit was instituted in February, 1893. Under these circumstances the trial court was warranted in holding, under the decisions of this state, that, although the defendant's departure was unjustified, yet the plaintiff by his subsequent conduct acquiesced in the separation, and hence there was no desertion within the contemplation of the statute *at the date of the institution of the suit*. This view is in harmony with the views expressed in my separate opinion in *Dwyer v. Dwyer*, 16 Mo. App. 422, and with those

expressed by the supreme court and the Kansas City court of appeals in *Simpson v. Simpson*, 31 Mo. 24, and *Gilmer v. Gilmer*, 37 Mo. App. 672.