ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1913.

(Continued from Volume 174.)

FAE COULTER, Respondent, v. GUSSIE J. COULTER, Appellant.

**Kansas City Court of Appeals, December 1, 1913.**

1. MAINTENANCE: Husband and Wife. The wife is bound to follow the fortunes of her husband and to live where he chooses to live and in the style and manner he may adopt. But where a wife lives apart from her husband with his consent, she cannot be said to have abandoned him and he is bound to support her and will remain bound until she refuses to return to him upon his request.

2. ———: ———: Express Averments. The objection to the omission from the petition of an express averment that the abandonment of plaintiff was without just cause is not deemed waived by answer to the merits, but a failure to demur to the petition does bring into play the rule of liberal construction, and, if it be found by a fair analysis of the facts alleged that the existence of the omitted fact must necessarily be inferred from them, the petition will not be held bad after verdict.

Appeal from Linn Circuit Court.—*Hon. Fred Lamb, Judge.*

AFFIRMED.

175 Mo. App.]                    (1)

Coulter v. Coulter.

*A. W. Mullins* for appellant.

*E. B. Fields* for respondent.

JOHNSON, J.—This is an action under section 8295, Revised Statutes 1909, which provides that "when the husband, without good cause, shall abandon his wife, and refuse or neglect to maintain and provide for her, the circuit court, on her petition for that purpose, shall order and adjudge such support and maintenance to be provided and paid by the husband for the wife and her children, or any of them, by that marriage, out of his property, and for such time as the nature of the case and the circumstances of the parties shall require," etc.

The petition alleges that the parties were married July 2, 1911, in this State and lived together as husband and wife until March 17, 1912; "that during all that time plaintiff faithfully demeaned herself and discharged all her duties as the wife of defendant and at all times treated him with kindness and affection . . . that defendant wholly disregarding his duties as the husband of plaintiff did, on or about the 17th day of March, 1912, abandon plaintiff and has ever since refused, failed and neglected to provide for her . . . that there has been born of the marriage aforesaid one child, now of tender years . . . a girl of the age of sixteen months." The prayer is for an order "that defendant pay to her for her support and maintenance of herself and child the sum of twenty-five dollars monthly and that defendant be compelled to give security for such maintenance and for such other and further relief as to the court shall seem meet and just."

The answer, in substance, denies the charge of abandonment and pleads that plaintiff deserted defendant without just cause or excuse. A jury was waived and the court, after hearing the evidence, ad-

judged the issues in favor of plaintiff and allowed her maintenance in the sum of ten dollars per month, commencing July 1, 1913. Defendant filed motions for a new trial and in arrest which were overruled and defendant appealed.

At the time of their marriage, which occurred July 2, 1911, both parties were nineteen years of age. The defendant was the adopted child of Diana Coulter, an aged widow, who owned and resided upon a well-improved farm of 240 acres in Linn county. Defendant lived on the farm with her and had no other means of support than that which she provided. Plaintiff lived with her parents in Browning but had a married sister living near Mrs. Coulter whom she often visited. She received the attentions of defendant at her sister's home and an intimacy ensued under circumstances not creditable to her sister and brother-in-law. A child was born to the young couple November 27, 1911, less than five months after their marriage. Mrs. Coulter opposed the marriage but was persuaded by her son to give her written consent to enable him to obtain a license. Plaintiff knew that her husband was without means or ability to support her without the aid of his foster mother and before the marriage expressed herself as willing to go with him and abide in his mother's house. They went there two days after the marriage and were kindly received. Mrs. Coulter offered to turn over the management of the farm to them, giving them all they could make out of it and stipulating only for her own support. Plaintiff lived there eleven days under this arrangement and then returned to the home of her parents where she has since resided.

It appears from the testimony of plaintiff that defendant knew she was returning to her parents with the intention of remaining with them until he could provide a different home for her. Her objection to the home he had provided was that his mother would not

allow any of her family to visit her there except her mother.

After the separation, defendant twice besought her to live with him but she refused on the ground that she could not live in harmony with his mother. She coupled her refusals with an offer to live with him if he would find her another home. The separation continued until March, 1912, when the parties lived as husband and wife for two days at the home of her parents. According to the testimony of plaintiff and of her mother, they then talked over their affairs and reached an agreement that plaintiff and their child should remain with her parents; that defendant would return to his foster mother and live with her until her death when they would reunite and live on the farm he would inherit from her. In the meantime he was to help support plaintiff and the child. The parties then separated again, defendant returning to his mother, but he did not contribute anything to the support of his wife and child and in the following October, commenced a suit for divorce against her on the ground of desertion. She employed counsel who filed an answer in which it was alleged that "she returned to her father's home, there to remain until such time as he, plaintiff, would provide her a home."

Afterward defendant dismissed the suit and went to Oklahoma to live and under date of March 5, 1913, he wrote his wife an affectionate letter in which he said "I want you to come out here and live with me. . . . I know we can live together. . . . Don't tell anyone where you are going for I don't want Ma to know we are living together or she won't give me anything. She don't know I am writing to you. If she did she would just rear. You come out here and we will live out here until we can do better. I wrote home and told them to sell everything I had and send me the money. I am going to put it in the gold mine. Bob says when they get started it will pay a dollar a day

to every hundred. If it does I wont work much. . . . How is your mother? Tell her hello for me and Ruth, too (referring to the baby). I want to hear from you so badly I can hardly wait.''

Plaintiff did not answer that letter but she did answer a second letter of the same tenor. She expressed a willingness to go to Oklahoma and live with defendant if he would send her money to defray the expenses of the trip and to pay the lawyer she had employed to defend the divorce suit. Defendant did not comply with this condition· and did not send her any money or offer to send any. He went to Kansas City from Oklahoma and wrote plaintiff a number of letters but did not provide a home for her nor offer her the means with which to rejoin him. Plaintiff stated at the trial, ''I will live with Gus at any home he may provide elsewhere from the old lady Coulter and I have always been ready to do so. I don't think my husband ever insisted on me going back to live with him at the old lady Coulter's since we made our arrangement in March, 1912.''

We have stated the facts as they appear from the evidence most favorable to plaintiff and it is not necessary to refer to the contradictory evidence offered by defendant since we find the case is in such state that the judgment should be affirmed if it is supported by substantial evidence. No findings of fact or declarations of law were asked or given and as this is a law case the judgment must be regarded as a finding for plaintiff on every contested issue of fact.

Defendant challenged in his motion in arrest the sufficiency of the petition to support the judgment. The point is based on the omission of an express averment that the abandonment of plaintiff was without just cause. A petition in all essential respects the same as the one in hand was before the St. Louis Court of Appeals in Munchow v. Munchow, 96 Mo. App. 553, and in an able opinion written by GOODE, J., it was

held to be good after verdict. We approve the reasoning of that opinion and refer to it for an expression of our own views. The statute expressly states that an abandonment to be actionable must be without good cause and it must be conceded that the existence of that elemental fact must be pleaded and proved. (Objection to the omission from the petition of an averment of an essential fact is not deemed waived by answer to the merits. But a failure to demur to the petition does bring into play the rule of liberal construction and if it be found by a fair analysis of the facts alleged that the existence of the omitted fact must necessarily be inferred from them, the petition will not be held bad after verdict.) The petition alleges that plaintiff faithfully demeaned herself as the wife of defendant and at all times treated him with kindness and affection and that wholly disregarding his duties as her husband, he abandoned her and has refused to support her. If plaintiff was without fault as she alleges and defendant in leaving her "wholly disregarded his duties as her husband" how could it possibly be inferred that he had good cause to leave her or to resist the conclusion that his conduct was culpable? We hold the objection is not well taken.

We shall agree with defendant, *arguendo,* that plaintiff was not justified in leaving the home her husband provided for her. It is still the law in this State "that the wife is bound to follow the fortunes of her husband and to live where he chooses to live and in the style and manner he may adopt." [Droege v. Droege, 52 Mo. App. 84; Messenger v. Messenger, 56 Mo. 329; Kaster v. Kaster, 43 Mo. App. 115; Collett v. Collett, 170 Mo. App. 590.] But this rule is not intended to make the wife the slave of her husband nor to give him the right to subject her to avoidable indignities. The duty of a wife to forsake her family and cleave to her husband is no greater nor more sacred than the corresponding duty of the husband. Neither spouse

has the right to demand in wantonness or mere caprice the estrangement of the other from his or her parents. For a husband to take his wife where she is unreasonably denied the privilege of seeing members of her own family who are of good repute would be an indignity no faithful husband would visit upon his wife. But, as stated, we are willing to concede, for the purposes of this case, that plaintiff abandoned her husband in the first instance and thereby deprived herself of the right to be supported by him. That defense cannot now aid defendant for he condoned it by resuming cohabitation with her. He followed this act with his consent for her to continue living with her parents until he could provide another home for her. It is well settled that where a wife lives apart from her husband with his consent, she cannot be said to have abandoned him and he is bound to support her and will remain bound until she refuses to return to him upon his request. [Lindenschmidt v. Lindenschmidt, 29 Mo. App. 295; Dwyer v. Dwyer, 26 Mo. App. 647.]

The letter written by defendant from Oklahoma shows quite clearly that he did not regard plaintiff as recalcitrant. He implored her to resume cohabitation with him and assured her of his ability to provide a home for her. It appears from what he said that he was not destitute of means and dependent upon his foster mother but when plaintiff signified her willingness to rejoin him and asked him to send her the money to enable her to do so, he either would not or could not comply with that request.

Perhaps he would have been justified in refusing to accede to the further condition that he pay her attorney's fee—we express no opinion on that subject—but it was his duty to offer her money to defray her necessary traveling expenses and his failure to perform that duty deprived his request for her return of any legal force. We think the evidence shows that

Coulter v. Coulter.

plaintiff is still living apart from her husband, with his consent, under their agreement made in March, 1912, and that defendant, without good cause, has abandoned her and refused to support her and their child. She had a good cause of action under the statute.

The judgment is affirmed.   All concur.