14243

STATE v. LYNCH

(184 S. E., 153)

October, 1935.

*Messrs. McEachin & Townsend,* for appellant,

*Messrs. G. Lloyd Ford, Solicitor, A. L. Hardee* and *Hugh L. Wilcox,* for respondent,

February 28, 1936.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

At the fall term of the Court of General Sessions for Florence County for the year 1935, W. S. Lynch was tried on an indictment which charged that: "W. S. Lynch being an able-bodied man and capable of earning a livelihood, did without just cause and excuse, abandon and fail to supply the actual necessaries of life to his wife, Essie B. Lynch, dependent upon him."

He was convicted and sentenced by Judge Gaston, and appeals upon six exceptions, which appellant's counsel in their brief say: "Resolve themselves in to the following points: I. The trial Judge erred in refusing to direct a verdict for the defendant. II. The trial Judge erred in charging that certain inferences might be drawn from the testimony."

A motion for directed verdict is made upon the grounds that:

(1) It does not appear that defendant has failed to supply his wife with the actual necessities of life.

(2) That no other reasonable inference can be drawn from the testimony but that the defendant has at all times supplied his wife with a residence and has at all times been ready and willing to supply her with the necessities of life.

(3) That no other reasonable inference can be drawn from the testimony than that Mrs. Lynch voluntarily left Dr. Lynch's residence and maintained herself elsewhere, without making any demand upon the defendant for any necessaries of life.

(4) That under the statute there is no obligation on the defendant to furnish any particular residence for his wife, and, having furnished the one described in the testimony and having been ready at all times to furnish his wife at that residence with the necessaries of life, he has discharged his obligation under the law.

(5) That the testimony is not sufficient to support a verdict of guilty.

The motion for directed verdict was overruled.

The alleged errors in the charge will be taken up in due order.

It is needless to go into the painful and malodorous details of the occurrences which led to the wreck of a home and culminated in the present litigation. The appellant is a capable physician. In 1920 he moved with his family to Lake City and established a hospital in connection with his medical practice. At first patients were taken in the home, but later a separate building was erected for hospital purposes. Mrs. Lynch, in addition to doing the household work, helped in nursing patients and cooking food for them.

She was asked: "Q. In connection with the patients what did you do? A. I did everything in general, I helped operate. I helped nurse the patients. I answered calls at night, and served the meals and did the washing for the whole hospital."

She testified further that her relations with Dr. Lynch became estranged when he brought nurses in the house who should not have been associated with his children and family; when she objected to this, he moved into the hospital, left the house in which they were living.

In September, 1923, Mrs. Lynch found her husband locked in his room at night with a woman; an altercation ensued; Mrs. Lynch demanded that the woman leave; she did not. Mrs. Lynch did not stay in the house that night. She testified that Dr. Lynch's attitude to his family was very cold; he was not on friendly terms with them, did not speak to his wife or children.

The prosecuting witness testified that she had nowhere to go, no place to live, except in the house where she was; that, after Dr. Lynch took up his abode at the hospital, he had arranged a credit account for the home of $50.00 per month at a store; that her health was bad; that she suffered from an incurable disease, which necessitated expensive treatment in Baltimore, all of which was known to the appellant. In October, 1925, the Court granted to Mrs. Lynch alimony in the

sum of $150.00 per month. Assuming that the alimony would be paid, she testifies that she felt that she should not longer remain in the home and left it. When the alimony was not paid, she sought to collect it by legal process, whereupon Dr. Lynch resisted it by legal process and put his property beyond her reach. *Lynch v. Lynch,* 161 S. C., 170, 159 S. E., 26, 80 A. L. R., 997.

The following appears in the record, folios 31, 32:

"Q. Has Dr. Lynch furnished any of the actual necessaries of life since that date? A. No.

"Q. What have you done in an effort to make a living for yourself? A. At first I was in no physical condition to do anything. I went to some relatives at Kingstree. They took me in and clothed me and gave me food. Then when I was able to work in a store for one of my relatives in Kingstree one tobacco season, then I worked in Lake City in a store during a tobacco season. Since then I have been covering comforts and doing any work that I could get to do—worked in a tea room. Now, I am on relief. I get $2.40 when I work 20 hours a week. Sometimes I get work every week and sometimes I don't. That is the nature of the work I have been doing. I nursed a couple of cases."

As against this proof of infidelity and of cruel and brutal treatment, of absenting himself from home, of refusing to pay the alimony adjudged against him, the appellant seeks to defend himself by saying that the wife could have remained in the house as long as she wished, and the puerile plea that since she left the house she has not asked of him any support or maintenance, and all this in the face of the fact that the record shows that, when his wife sought by means of legal process to collect the alimony, he put his own property beyond the reach of the law, and procured a legal adjudication that he was not the owner of the home property, that it was the property of his son, who lives there now with his wife, and where Mrs. Lynch has at intervals returned as a visitor to her son and his family. It further appears that, when she brought suit for alimony, the pitiful provision of $50.00 per

month ceased. He admitted on cross examination that he had not contributed one cent to her support in ten years.

The presiding Judge refused to admit the proof of other acts of infidelity.

The evidence in the case brings it squarely within the rule laid down by this Court.

In the case of *State v. Bagwell,* 125 S. C., 401, 118 S. E., 767, 768, it appears that the wife was taken by the husband to live at the home of his mother; that the wife left this home because the mother-in-law subjected her, in the presence of her husband, to foul and abusive language and treatment. On appeal, this Court said:

"Appellant's legal position is that the wife forfeited the right to the husband's marital care and support by leaving and remaining away from the home he had provided for her. His contentions are that the husband has the right to determine the marital abode; that the wife has no right to leave the abode so fixed except for conduct on the part of the husband which amounts to saevitia (*Hair v. Hair,* 10 Rich. Eq. [163], 173; *Wise v. Wise,* 60 S. C. [426], 442, 38 S. E., 794); that subjecting the wife to mere insulting and abusive words of a mother-in-law may not be held to constitute such legal cruelty as will justify the wife in leaving the marital abode chosen by her husband; and that under the facts of the case at bar, for the husband's failure to support his wife and child, there was as a matter of law 'just cause or excuse.' * * *

"But in the case at bar the abusive language which, appellant says, did not justify the wife in leaving the marital abode chosen by the husband, was used by the mother-in-law. The wife marries the husband, not his mother. His first and paramount obligation is to his wife. Matt. XIX:5. The duty of the wife to forsake her family and cleave to her husband is no more imperative or sacred than the corresponding duty of the husband. Neither spouse has the right in mere wantonness or caprice to demand the estrangement of the other from his or her parents. *Coulter v. Coulter,* 175 Mo. App.,

1, 161 S. W., 281. But, certainly, the wife's marital duty to put up with coarse and abusive language from a husband, whom she has taken for better or for worse, may not be extended to cover the tongue of a cantankerous mother-in-law. As to what conduct of a husband's relatives will justify the wife in leaving the marital abode, it cannot be said that the courts have formulated a rule of general application. But as pointed out by the author of the note, appearing at page 633, Ann. Cas., 1914-B : 'It may, however, be said, as the general effect of the decisions, that the duty of the husband to provide a home not only extends to the furnishing of material comforts in accordance with his means but requires the furnishing of a home wherein the wife is free from abuse, ill treatment, and unwarranted interference from members of the household. If such a home is not provided, the wife is justified in leaving, and not only is not guilty of desertion in so doing but may charge the husband with constructive desertion' "—citing authorities.

In the case of *State v. Stone,* 111 S. C., 496, 98 S. E., 333, this Court said :

"The defendant and his wife lived together for a short time only. Stone lives in Aiken county, near the Lexington county line, and was married there. His wife, before her marriage, lived with her father in Lexington county. On account of the disagreement between them, Stone left his home in Aiken county and told his wife he did not intend to live with her any longer. He sent to the house and had it stripped of everything, even the stove and cooking utensils which she was using at the time to prepare her dinner. Having nowhere else to go, Mrs. Stone went across the county line to live with her father.   *   *   *

"Abandonment may be one act, or a continuing act, according to circumstances. The offense is made by the statute a continuing offense. While it is ordinarily true that a husband is only required to furnish the necessities of life at his place of residence, yet, if he destroys his home and provides no other place where she can live, then, from the necessity of

the case, she must live where she can live, and the place where she can live is the place where he must provide for her. Mrs. Stone found a home in Lexington county and it was his failure to provide the necessities in Lexington that was a violation of the statute."

In the case of *Sams v. Sams,* 117 S. C., 312, 108 S. E., 921, plaintiff brought action against her husband for alimony; she was younger than he; he had three daughters by a former wife. This Court said:

"It seems that a few days after the marriage, the plaintiff learned that her husband, two days before the marriage, to wit, on February 12, 1906, had conveyed away nearly if not all of his real estate. It is alleged and not denied that these conveyances were made in contemplation of marriage and to get the property out of the reach of any possible interference by the plaintiff when she should become his wife. The property conveyed is estimated to be worth anywhere from $75,000 to $139,750. The master recommended judgment in favor of the plaintiff against the defendant for arrears of alimony in the sum of $7,925 and found that the deeds, so far as the plaintiff is concerned, are a legal fraud; recommends $125 per month for future alimony, and also temporary alimony and counsel fees. From the findings of the master, the defendant appeals to the court of common pleas. The three daughters asked to be made parties, but their petition was refused. With some slight modifications not material here, the report of the master was affirmed. From this judgment the defendant appealed.

"The first assignment of error is that there was error in holding that the husband deserted his wife. This assignment of error cannot be sustained. The desertion, to a woman of any sort of refinement of feeling, was absolute. The defendant conveyed his property by conveyances that did not deprive him of its use, but only sought to prevent the accruing of any rights to the wife. These deeds were recorded, and said to all the world: 'I am about to marry a woman in whose honesty and fair dealings I have not the slightest

confidence.' It was a cruel blow, uncalled for, unprovoked, wholly gratuitous. * * * The defendant husband deserted his wife, the plaintiff, and she was entitled to at least the alimony accorded to her by the judgment appealed from and the counsel fees."

The evidence amply sustains the action of the trial Judge in denying the motion for directed verdict and that for a new trial. Therefore Exceptions 1 and 2 must be overruled. The evidence is clear that the contention made by Exceptions 3 and 6 is without merit. The charge of the trial Judge is not open to the criticism made against it by Exceptions 4 and 5. Indeed, the learned and just Judge who presided at the trial of this case was liberal toward the appellant in his interpretation and application of the law. He overruled the offer of the State to show additional acts of misconduct on the part of appellant. He held the State to proof of abandonment by the appellant and of his failure to provide his wife with the necessaries of life, but likewise held that he could not be charged with these offenses while the wife occupied the home and accepted the provisions of $50.00 per month credit account for groceries. The whole charge is a clear exposition of the law applicable to the case, and appellant has no just ground of complaint of it. He himself left the house and took up his abode at the hospital. The evidence is clear that his conduct had been and was such as to offend the sensibilities of any refined woman and to make life with him an impossibility. When she brought action and recovered alimony, she left the house because she thought it unfair to him to accept alimony and at the same time live in his home and accept his food. His response to this fair spirit was to fail to pay the alimony and to put his property beyond her reach and to stop the $50.00 per month credit which he claims to have provided for her. He admits that for ten years he has never contributed a cent to her support and maintenance. Yet he knew that she suffered from an incurable malady which required expensive medical treatment. He knew that she was without means, and that she was struggling to

maintain herself by her own exertions. At last she is left desolate and destitute and driven to accept the dole provided by the government.

The sentence of the Court of Sessions is a lenient one.

The judgment of this Court is that the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Stabler and Mr. Justice Fishburne concur.

Mr. Justice Carter concurs in result.

Mr. Justice Baker did not participate.