### EASLEY v. EASLEY.

No. 28803.

St. Louis Court of Appeals.

Missouri.

March 16, 1954.

Roy Hamlin, Hannibal, for appellant.

Fuller, Ely & Hibbard, Hannibal, for respondent.

WOLFE, Commissioner.

This action originated as a divorce suit brought by Lilburn H. Easley. The defendant, Madeline A. Easley, filed a cross-petition for separate maintenance and the plaintiff thereafter dismissed his petition for divorce. The trial upon the cross-petition resulted in an award to the defendant of $75 a month for separate maintenance. It is from this judgment that the plaintiff prosecutes this appeal.

It is alleged in the cross-petition for separate maintenance, which was the only action tried, that Easley left the defendant on July 4, 1950, without just cause and has since that time failed to provide for her. It is further alleged that prior to that time he became "infatuated" with another woman and was cold and indifferent towards the defendant. It is alleged that he refused to stay at home evenings or to take plaintiff to social gatherings.

The parties were married in 1931 and one son was born of the union. He was twenty years old at the time of the trial. The first open breach between Mr. and Mrs. Easley occurred in 1947 when Easley left home and was gone for a period of six weeks. At the time he left they were living with relatives of his wife and he did not return

until it was agreed that they should live by themselves. They lived by themselves from 1947 to 1949, when his wife persuaded him to again move into the same house with her relatives. They did this and lived there until July 4, 1950, when the plaintiff left. The day after he left the defendant drew all of their savings, which amounted to $800, out of the bank and three days thereafter she moved with her sister and her son to Illinois where she has lived at all times since. She did not tell Easley where she had gone and he never communicated with her or gave her any money from the time of his departure up to the time of the trial. Easley never earned more than a meager income from his employment as a shoe worker but he gave his wife $40 a week to pay the family expenses. This was more than his average earnings but he supplemented them by working as treasurer of his local union and repairing refrigerators at night. At the time of the trial he was unemployed and his only income was $20 a week unemployment insurance. He had no property other than one government bond worth $18.75.

To this point the testimony is without conflict but each party has a different version of what brought about the separation of July 4, 1950.

The defendant testified that they were happily married for a short while after their reunion in 1947 but that thereafter the plaintiff started going out nights; that she saw him several times ride home in an automobile with a woman who worked at the factory. On July 4, 1950, she stated that she asked her husband to go with the rest of them that lived in the household to some automobile races that were being held in Hannibal, which was the city of their domicile. Easley stated that he did not want to go as he intended to go to the house of a friend for the purpose of painting some duck decoys. He left home early in the morning and she and the rest of those living in the house went to the races around noon. Before she left she prepared a lunch for him and put part of it on the table and part in the refrigerator. When they came home at about 4:00 p. m., the lunch had been eaten and she discovered that plaintiff's clothing was gone. At around 5:00 o'clock that evening the son of the parties called up the house of the friend where Easley had gone in the morning to paint decoys but these friends did not know of his whereabouts. The Fourth of July, 1950, was on Tuesday and on the Friday before the plaintiff had given the defendant $80, which was for two weeks household expenses. On the 5th of July, she drew out of the bank $800, which was all of their savings, and on the 7th she took all of their furniture and moved with her son and her sister to Moline, Illinois. She gave $425 of the $800 she had withdrawn to her sister and kept the rest herself. She lived in Moline at all times since and was supported by her son who earned $14 a day as a foundry worker until he was inducted into the armed services. After that she received $90 a month as a dependency allowance. She never told her husband where she was but she mailed him a letter on July 30, from Hannibal, Missouri, advising him that she had withdrawn their savings. The son, who was called as a witness for the defendant, corroborated his mother's testimony that the plaintiff frequently absented himself from home in evenings.

Plaintiff testified that he and his wife had always gotten along well together when they were living by themselves, that their only differences arose because of her desire to live with her relatives. In 1947, when they were living alone, they were happy together. His wife persuaded him to again move in with her sister's family on the basis that they would share certain expenses but pay no rent. After they moved there the number in the household was increased by having two more of her relatives move in. It was a noisy place with several radios going and he could not work at home. He was obliged to go out to the union hall for, as treasurer of the union, he kept the records of its 470 members. This required keeping up the social security data of each member, the changes in membership by those leaving to enter

the armed services and new members coming in, reports to the International Union and reports to the trustees and auditors. It was a time-consuming job and members of his union testified that he could be found at the union hall most every night. He also did some work as a refrigerator repairman. Mrs. Easley knew where he was at night. As to the incident relating to riding in the automobile belonging to the woman mentioned by Mrs. Easley, the woman in question was a perfectly respectable fellow employee who on various occasions gave workers at the factory a ride home in her automobile. This was the uncontradicted testimony of several employees. As to the occurrence on July 4, 1950, the plaintiff stated that he renewed his frequently made request to his wife that they move to a place of their own and she refused to consider it. She said that she could not leave her family. He returned home around noon on July 4 and found no one there so he took his clothes and moved to the house of his parents. He went back the next day but no one was at home and he did not know where his wife had gone. He stated that he still loved his wife and desired to live with her in a home of their own. The letter that he received from Mrs. Easley, which was mailed from Hannibal on July 30, concluded by saying that she had given a large portion of their savings to her sister as rent. There seems to be no doubt that they were not obligated to pay rent under the arrangement that they had with the sister. The paragraph referred to is as follows:

"Kate didn't want to take it but I made her. I wasn't going to let her work hard at the factory & give us free rent and keep us warm when you didn't appreciate it."

■ The only question before us is the sufficiency of the evidence to support the decree of separate maintenance awarded the defendant. In passing upon this we must make our own determination of the case and direct a judgment responsive to the probative force of all the circumstances present. While we "will be inclined to defer to the trial court's findings in instances where sharply conflicting evidence does not

greatly preponderate one way or the other, such findings are in no sense binding upon the appellate court, and it will not hesitate to disregard them where its own consideration of the evidence impels the conclusion that such findings were erroneous." Rusche v. Rusche, Mo.App., 200 S.W.2d 577, 580; Clemens v. Clemens, 361 Mo. 485, 235 S.W.2d 342; Harviel v. Harviel, Mo.App., 247 S.W.2d 346; Phelps v. Phelps, Mo.App., 246 S.W.2d 838; Kendrick v. Kendrick, Mo.App., 251 S.W.2d 329.

■ The right of a wife to separate maintenance arises under the statute, Section 452.130, RSMo 1949, V.A.M.S., when a husband, "without good cause, shall abandon his wife, and refuse or neglect to maintain and provide for her". Examining the evidence for the first requisite, that is, whether or not there was good cause for the husband to leave, we find that the wife insisted upon living with her relatives. They seemed to have come first in her esteem, and there can be little doubt about this, for she not only gave her sister over half of the money drawn from the bank but she left with the same sister about as soon as possible after July 4. Her own letter to her husband seems to support his assertion that he did not want to live with her relatives when she stated that her husband did not appreciate what Kate had done for them. It is the prerogative of the husband to select the domicile, and if the wife refuses to live with him in the domicile of his selection, when it is a residence suitable to persons of their financial status, it is the wife and not the husband who must be charged with the blame for the separation. Schuman v. Schuman, 93 Mo.App. 99; Coulter v. Coulter, 175 Mo.App. 1, 161 S.W. 281; Elsey v. Elsey, Mo.App., 297 S.W. 978.

■ It is, of course, incumbent upon the husband to furnish the domicile in which he desires to live and this Easley did not do. We must appraise his failure in this respect in the light of the existing circumstances. According to him his wife had refused to move and on his holiday

when his wife had preferred to go with her son and her relatives to see the races rather than spending the afternoon with him, he left in a pique and went to his own relatives. Before it was reasonably possible to consider finding a new establishment his wife had left for parts unknown. We cannot hold that this amounted to an abandonment for the equities of the matter rest with the husband and while this is a statutory action it is to be tried upon equitable principles. Wright v. Wright, 350 Mo. 325, 165 S.W.2d 870; Hoynes v. Hoynes, Mo. App., 218 S.W.2d 823; Brooks v. Brooks, Mo.App., 211 S.W.2d 65.

As to the second requisite to the action, the refusal or neglect to provide, it is true that Easley had not provided for his wife since their separation. We must note, however, that four days before the separation took place he had given his wife enough money for two weeks household expenses and before this could have been used in the normal course of events she had taken all of their savings and left the state. She never requested money and was apparently content to live with her sister on the earnings of her son. Easley never refused to provide and it does not appear equitable to charge him with neglect to do so when he did not know where his wife was and she did not see fit to inform him.

The charge by defendant that plaintiff associated with other women was found by the trial court to be baseless and quite properly so. There was not a shred of evidence to support it. ·

It appears from the whole record that Mrs. Easley preferred the company of her own kin to the companionship of her husband. This alone is the cause of the situation in which the parties are now placed, and Easley, who was an industrious man of exemplary habits, cannot be held to have given grounds for an award of separate maintenance to his wife.

For the reasons stated, it is the recommendation of the Commissioner that the judgment of the Hannibal Court of Common Pleas be reversed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the Court.

The judgment of the Hannibal Court of Common Pleas is accordingly reversed.

ANDERSON, P. J., and RUDDY and BENNICK, JJ., concur.