VEDA McKAY, Respondent, v. FRANK P. McKAY, Appellant.

### Kansas City Court of Appeals, Nov. 22, 1915.

1. **ALIENATION OF AFFECTIONS: Damages.** The plaintiff sued to recover damages for the alienation of the affections of her husband by the defendant, his foster father, and obtained a verdict for $3000 actual and $1500 exemplary damages. The plaintiff afterwards remitted $2000 and defendant appealed. *Held*, there is no prejudicial error in the record and the judgment is affirmed.

2. **INSTRUCTIONS: Reference to Petition for Essential Facts.** An instruction in suit for alienation of affection which states "The law gives her a right of action against any person who wilfully and maliciously entices, persuades, induces or influences her husband to separate or remain apart from her. Therefore, if you shall believe from the evidence that the defendant, Frank P. McKay, wilfully and maliciously so conducted himself, as alleged in plaintiff's petition with the purpose and intent to cause the separation of the plaintiff's husband from her, and that he did thereby accomplish such purpose and intent, then your verdict shall be in favor of the plaintiff" is not open to the objection, that the jury must refer to the petition for essential facts upon which the right to recovery is predicated.

3. **EVIDENCE: Refusal to Permit the Husband to Testify.** Under Sections 6354 and 6359, Revised Statutes 1909, a husband is not competent to testify for or against his spouse in the latter's suit for alienation of affections, because these sections do not go far enough to abrogate the common law rule disqualifying the husband or wife from testifying against each other.

Appeal from Sullivan Circuit Court.—*Hon. Fred Lamb*, Judge.

AFFIRMED.

*Calfee & Painter, J. M. Wattenbarger* and *E. B. Fields* for respondent.

*Scott J. Miller* for appellant.

JOHNSON, J.—Plaintiff sued for the recovery of both actual and exemplary damages for the alienation of the affections of her husband by defendant, his foster father. The jury found for plaintiff, assessed her actual damages at $3000 and exemplary damages in the sum of $1500, but on the hearing of the motion for a new trial plaintiff (moved thereto by expressions from the court) entered a remittitur of $2000, whereupon the motion was overruled, judgment was rendered for plaintiff for $2500, and defendant appealed.

Plaintiff, at the age of fifteen, and Homer McKay, at the age of twenty, were married in Sullivan county in January, 1912, and lived together until November, 1914, when they separated. Plaintiff, with their two children, returned to her father's house and Homer continued to reside with defendant with whom he and plaintiff had been living. The evidence of plaintiff tends to show that defendant, actuated by virulent hatred, heaped the grossest indignities and insults upon her in the presence of her husband who not only exhibited no resentment or purpose to protect her, but passively acquiesced in such treatment, finally consented to their separation and her enforced return to her father and chose to remain with defendant.

Further it shows, and this fact virtually is conceded, that after the separation and with the aid of insincere protestations that he was securing means to establish a new home for himself and plaintiff and their children, Homer, prompted by defendant, induced her to join in the execution of a deed to defendant, conveying forty acres of land Homer had inherited from his foster mother, on the false representation that defendant had bought the land at a fair valuation. Defendant gave Homer a check in pretended payment of the purchase price but the check was not presented to the bank and afterwards was returned to defendant.

The petition alleges " that the defendant, well knowing that plaintiff and Homer McKay were husband and wife, and that they were living happily together, enjoying the aid, support, companionship, society and affection of each other, wrongfully, wickedly and maliciously acted with the wrongful, wicked and malicious intent to cause plaintiff's said husband to cease to love her, and to leave and abandon her, and to cease living with plaintiff as her husband, and to deprive plaintiff of the love, aid, support, companionship, society, protection, and affection of her said husband. That for a long period of time, to-wit, for several months, defendant pursued this wicked, wrongful and malicious course toward plaintiff and her said husband until finally on or about the——day of November, 1914, the defendant pursuant to his said wicked, wrongful and malicious intent, did wrongfully, wickedly and maliciously entice, influence and induce plaintiff's said husband to leave and abandon her; and her said husband, being influenced by and acting under said wrongful, wicked, and malicious enticement, influence and inducement of the defendant, did leave and abandon her and being influenced by and acting under said wrongful, wicked and malicious enticement, influence and inducement has ever since remained away from and separate and apart from her.

"And ever since said abandonment, the defendant has wrongfully, wickedly and maliciously detained and harbored plaintiff's said husband and has kept him separate and apart from her, and has by his said wrongful, wicked and malicious acts and conduct deprived plaintiff, and still deprives her, of the aid, support, companionship, society, protection and affection of her said husband."

In the first instruction given at the request of plaintiff the jury were told: "The law gives her a right of action against any person who willfully and maliciously entices, persuades, induces or influences

her husband to separate or remain apart from her. Therefore, if you shall believe from the evidence that the defendant, Frank P. McKay, willfully and maliciously so conducted himself, as alleged in plaintiff's petition with the purpose and intent to cause the separation of the plaintiff's husband from her, and that he did thereby accomplish such purpose and intent, then your verdict shall be in favor of the plaintiff.''

This instruction is criticised on the ground that it is reversible error for an instruction, which assumes to cover the whole case and to direct a verdict, to refer to the petition for the essential facts upon which the right of recovery is predicated.

Where the evidence, in its phase most favorable to the pleaded cause, is sufficient to warrant a recovery but falls short of sustaining all of the allegations of the petition, it is reversible error to refer the jury to the petition for the facts of the case, since the effect of such practice would be to abolish evidentiary limits and restrictions and to allow the plaintiff to recover upon alleged but unproved facts. ''It was the duty of the court to tell the jury what are the essential facts to be found under the pleadings.'' [Procter v. Loomis, 35 Mo. App. l. c. 488; McGinnis v. Railroad, 21 Mo. App. 399; Remmler v. Shenuit, 15 Mo. App. 192; Edelamn v. St. L. Trans. Co., 3 Mo. App. 503; Comston v. Railroad, 25 Mo. App. 619; Webb v. Carter, 121 Mo. App. 147.] But this rule does not obtain in instances where the allegations are no broader than the proofs (Remmler v. Shenuit, supra), for the obvious reason that in such case the reference to the petition cannot be said to have enlarged the cause defined by the evidence. Unless reference to the petition has the effect of broadening the evidentiary issues, it should not be classed as prejudicial and, therefore, reversible error, though it is a practice likely to mislead the jury and for that reason should be avoided.

The allegations of the petition in hand are general, not specific, and contain no fact not adequately supported by proof. There is no room for the contention that there is any discrepancy between allegation and proof. The field of the one is as broad as the other and no broader and an instruction which referred to the petition for the facts necessarily would mean the same as one which referred only to the evidence. Moreover, the instruction definitely states the ultimate facts which would entitle plaintiff to recover in practically the same form of their averment in the petition. It may be accurately said that the jury were not relegated to the petition but were told what facts, if found, would warrant a verdict for plaintiff. The addition of the words "as charged in the petition" neither added to nor substracted from the stated hypothesis and, therefore, was not prejudicial. [State v. Scott, 109 Mo. l. c. 231; Hartpence v. Rogers, 143 Mo. l. c. 633; Britton v. St. Louis, 120 Mo. 437.]

Complaint is made of prejudicial error in the seventh instruction given at the request of plaintiff and in the modification by the court of defendant's eighth instruction.

On the hypothesis, which we find abundantly supported by evidence, that plaintiff was compelled to leave the home provided by her husband because defendant, who dominated that household, created an intolerable situation for her by his continued hostile and bitter attitude and violent and truculent conduct towards her, and by his open, incessant and successful efforts to turn her husband against her, the instruction told the jury that in leaving her husband under such compulsory circumstances, plaintiff was not guilty of legal desertion but, on the other hand, that such facts would constitute an abandonment of her by her husband. The eighth instruction of defendant, which the court modified, in dealing with the same

192MA15

subject, told the jury that the husband is the head of the family and that the wife has no right to leave a suitable home he provides for her, without good and sufficient reasons therefor and "if she (plaintiff) left his bed and board voluntarily and of her own accord, *without reasonable excuse therefor,* the plaintiff cannot recover," etc. The modification consisted of the interpolation by the court of the words we have italicized.

We do not share the view of counsel for defendant that these instructions, as well as the instruction given for plaintiff on the measure of damages, injected extrinsic and prejudicial issues into the case by "making defendant responsible for the acts of Homer McKay who was the husband of plaintiff" and by enlarging the pleaded cause of action for aliénation of affections into an omnibus action which included not only a right to recover for assault and slander committed by defendant, but also to recover damages for her husband's abandonment of her. The issue of whether plaintiff left her husband without just cause or excuse or because she was driven from home by her father-in-law, after he had gained complete mastery over the mind of her husband, was the principal issue of fact contested at the trial, and relates to the most important and indispensable ingredient of a cause for alienation of affections. Whether the wrongful intermeddler employs seductive arts and wiles, or violence and intimidation, or both, the final issue in such cases is whether or not he intentionally thrust himself between husband and wife and pursued a course of conduct which eventuated in the destruction of their marital unity and the estrangement of one spouse from the other.

The proofs of plaintiff tend to show that defendant in his practices ran the gamut of ingenious and

malevolent resourcefulness. He courted and cajoled his son and, at times, resorted to threats and intimidations to cause him to put away his wife, and by slander and abuse of her, made her position one of humiliation and degradation in the sight of her husband who, instead of protesting and defending her wifely honor and dignity, seems to have fallen into the attitude of regarding and treating her as one who deserved the reproaches and abuses she received.

Certainly proof of the nature, extent and ultimate result of the influence defendant acquired over the mind of his son and exerted to the disruption of the marital relationship was germane to the issues tendered by the petition and the court did not err in defining the conditions as outlined by the evidence which would justify the act of plaintiff in leaving the home to which her husband had taken her but which had been made intolerable. We find no substantial difference between the instruction as asked by defendant and as modified by the court in the definition of the causes which would excuse the wife for leaving her husband. The interpolated clause "without reasonable excuse therefor," has the same meaning as the previous clause "without good and sufficient reasons therefor" given as a qualification of the wifely duty to follow the fortunes of the husband and abide in the home he provides for her. With or without the modification the instruction substantially is the counterpart of plaintiff's seventh instruction which, inferentially conceding the duty of the wife not to forsake the home of her husband without good cause, submitted an hypothesis of facts which, if true, constituted such good cause.

The rule that the wife is bound to follow the fortunes of her husband and to live in the home he provides for her still obtains in this state. [Coulter v. Coulter, 175 Mo. App. 1; Droege v. Droege, 52 Mo. App. 84;

Messenger v. Messenger, 56 Mo. 329; Kaster v. Kaster, 43 Mo. App. 115; Collett v. Collett, 170 Mo. App. 590.] But as we observed in Coulter v. Coulter, supra, this rule is not intended to make the wife the slave of the husband nor to reduce her to helplessness if in disregard of his corresponding duty to provide her a home suitable to his means and station in life, he keeps her in a place where he has withdrawn from her all care and protection and allows her to become the victim of such gross indignities as the evidence of plaintiff shows she was compelled to endure. The instructions under consideration correctly defined material issues and were essential to the proper guidance of the jury.

The fourth instruction asked by defendant, which the court refused to give, in substance was covered by the eighth instruction and its refusal may be sustained on the ground that it was merely repetitive. Other rulings of the court on instructions of which defendant complains were so clearly proper that special reference to them is deemed unnecessary.

The court did not err in refusing to permit the husband of plaintiff, called as a witness by defendant, to testify for the alleged reason that he was incompetent. Our statutes (section 6354 and 6359, R. S. 1909) are interpreted as an enabling act "making persons competent under certain conditions who at common law under like conditions were incompetent witnesses." [Lawson v. Cooper, 174 Mo. 1. c. 223.] They do not go far enough to abrogate the application of the common law disqualification of husband or wife to testify for or against his spouse in the latter's suit for alienation of affections. Counsel for defendant urges as applicable an exception to the hearsay rule which, in actions of this character, allows evidence to be received of declarations made at a time when there was no motive to deceive by the spouse whose af-

fections are alleged to have been alienated tending to disclose the state of the affections of such spouse which existed during the exertion of the alleged wrongful influence of the defendant. [Fuller v. Robinson, 230 Mo. 22.] But that exception to the general hearsay rule does not perform, and should not be stretched to perform, the functions of an enabling statute which further encroaches upon the field of common law disability. It is one thing to receive evidence of declarations of the spouse, alleged to have been wickedly influenced, which tend to disclose his state of mind and feelings, and a far different thing to permit him to appear as a witness in his wife's alienation suit and give testimony for or against her. Nothing short of a legislative enactment removing his common law disability would be sufficient warrant for holding him to be a competent witness in such case. The ruling excluding him was proper. There is no prejudicial error in the record and the judgment is affirmed. All concur.