## ALBERT McCOY, Appellant, v. W. E. HILL.

### Division One, December 18, 1922.

1. **ALIENATION: Visit of Other Girls to Wife: Reputation: Credibility.** In a suit by a husband for the alienation of his wife's affections, wherein plaintiff has on direct examination testified that "no person of bad reputation" had visited his home while he was present or with his consent, and that he had seen his wife and defendant talking together, questions on cross-examination as to whether he knew that certain girls visited his house and whether their reputation for morality and chastity was bad, tended to affect his credibility and his answers thereto were properly admitted; and likewise questions as to whether he had observed defendant talking with said girls more frequently than with his wife and his answers thereto were properly admitted, since they tended to explain the comparative intimacy between defendant and said girls.

2. ————: **Mistreatment of Step Children: Contradicting Petition.** Where plaintiff in his suit for alienation has charged in his petition that defendant has alienated his wife's affections, has enticed her away and has deprived him of her comfort, society and assistance, it is not error to permit defendant to ask him on cross-examination if his treatment of his step-son did not cause her to leave him, and if she did not in her suit for divorce allege that on account of his abusive conduct towards his step-children she could no longer live with him, since such questions tended to elicit a different reason for his wife's leaving him than those alleged in his petition.

3. ———: Explaining Conduct: Hearsay. Plaintiff had introduced a witness who testified that after plaintiff's wife had left him and taken up her abode in one of defendant's houses he had delivered a load of wood to her and that defendant paid him for it. *Held,* that it was proper for defendant to explain his connection with the transaction, and to testify that she re-paid him for the wood, and it was not reversible error to permit him in the course of his explanation to testify as to what plaintiff's wife said to him in respect to paying for the wood, although it was an encroachment upon the rule against the admission of hearsay.

4. ———: Instruction: Association With Disreputable Women: Bar to Recovery. In an action for damages by a husband in which he charges that defendant alienated his wife's affections, and debauched and carnally knew her, and maliciously enticed her away, it is reversible error to instruct the jury that if she, prior to her separation from plaintiff and with his knowledge and consent, associated with women of bad reputation for morality and chastity and that their home was a common meeting place of prostitutes and men of disrepute, their verdict must be for the defendant, regardless of whether he debauched her, alienated her affections, or enticed her away. Even though she was herself immoral, if defendant debauched her without her husband's acquiescence, the defendant must respond in substantial damages.

5. ———: ———: Conflicting. The instructions given for plaintiff and defendant must be consistent with each other, and the whole taken together must present but one rule for the guidance of the jury on any particular issue. If plaintiff's instructions are consistent with his petition and it states a cause of action, instructions for defendant hypothesizing a different state of facts and presenting a theory wholly disconnected with and constituting no defense to the propositions laid down in plaintiff's instructions are erroneous, and particularly so where they authorize a verdict upon facts which are not an issue in the case.

6. ———: Criminal Conversation: Right to Recover. In a suit charging defendant with criminal conversation with plaintiff's wife, wherein there is proof to establish such charge and the case is submitted to the jury on that theory, an instruction for the defendant telling the jury that mere proof that the wife "had improper relations with defendant is not sufficient to entitle plaintiff to recover" is erroneous.

7. ———: ———: Infatuation of Wife for Defendant. In a suit charging the alienation of the affections of plaintiff's wife and criminal conversation with her, an instruction for defendant telling the jury that plaintiff must prove by the greater weight of the

McCoy v. Hill.

credible evidence that "the plaintiff's wife had an infatuation for the defendant" is erroneous, in that it imposes on plaintiff a greater burden than the law requires. "Infatuation" implies foolish and extravagant passion, and alienation of affections does not necessarily involve such extreme emotions.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

REVERSED AND REMANDED.

*Hall & Billings* and *McKay & Meddling* for appellant.

(1) It was error to admit testimony as to the reputation of the Baker girls for morality and chastity. DeFord v. Johnson, 177 S. W. (Mo.) 577; DeFord v. Johnson, 152 Mo. App. 209; Scheffler v. Robinson, 159 Mo. App. 527. (2) It was error to permit testimony to be given relative to the visits of the Baker girls to the home of the plaintiff. Authorities supra. (3) It was error to admit testimony that defendant was seen talking more frequently to the Baker girls than to plaintiff's wife. Authorities supra. (4) It was error to admit allegations of Mrs. McCoy's divorce petition. McKay v. McKay, 192 Mo. App. 143; DeFord v. Johnson, 152 Mo. App. 209; Fuller v. Robinson, 230 Mo. 22; DeFord v. Johnson, 177 S. W. (Mo.) 577; 11 Cyc. 1623. (5) It was error to admit testimony that there were no objections made to defendant coming to the McCoy house. Hearsay. Wife incompetent against husband. Fuller v. Robinson, 230 Mo. 22; McKay v. McKay, 192 Mo. App. 143; Wagner v. Wagner, 204 S. W. (Mo.) 390. (6) It was error to admit testimony of defendant as to what the wife of the plaintiff told him. Hearsay. Wife incompetent. Scheffler v. Robinson, 159 Mo. App. 527; McKay v. McKay, 192 Mo. App. 143; Wagner v. Wagner, 204 S. W. (Mo.) 390. (7) Defendant's Instruction 7 is bad and constitutes reversible error. It is a vicious comment upon the evidence, assumes the existence of facts not in

evidence, and does not include the ultimate facts, is not based upon any alleged facts which would constitute a defense to the issues made by the second and third counts of the petition and the evidence thereunder, namely, criminal conversation, and enticement. Riffe v. Wabash, 207 S. W. (Mo.) 81; Ganey v. Kansas City, 259 Mo. 663; Scheffler v. Robinson, 159 Mo. App. 527; DeFord v. Johnson, 152 Mo. App. 209; DeFord v. Johnson, 177 S. W. 577; Modiste v. McPike, 74 Mo. 636; Linden v. McClintock, 187 S. W. 82; Gunn v. Hemphill, 218 S. W. 978. (8) Instruction 8 is bad and constitutes reversible error. It is a reiteration of the same errors emphasized pointed out in No. 7 and attempts to invoke the same misapprehended matters as a defense. Authorities supra. (9) Instruction 11 is reversible error. It misapprehends all the elements of the actions for criminal conversation and enticement, and harboring, and required that the jury find plaintiff's wife has affection for her husband, that the plaintiff's wife acquired an infatuation for defendant, that defendant inspired said infatuation by intentional wrong, and caused Mrs. McCoy's affection for her husband to cease and to be transferred to defendant, before plaintiff could recover in this action. It also told the jury proof that defendant had improper relations with plaintiff's wife was not sufficient to warrant a recovery. This was a suit for criminal conversation and enticement. However, this instruction as given under the testimony in this case would be error if the action had been for alienation of affections. DeFord v. Johnson, 152 Mo. App. 209; Scheffler v. Robinson, 159 Mo. App. 527; Modiste v. McPike, 74 Mo. 636; Surbeck v. Surbeck, 208 S. W. 645; Nichols v. Nichols, 147 Mo. 387; DeFord v. Johnson, 177 S. W. 577.

*James A. Bradley, Orville Zimmerman, Mayes & Gossom* and *McKay & Jones* for respondent.

(1) All the testimony was proper. Assignments 1, 2 and 3 were proper under the pleadings and the

defense, and in mitigation of damages, and as to 2 was proper cross-examination of plaintiff and appellant. The evidence against which assignment 5 is directed was admissible, but even if inadmissible, it would be harmless error, in view of the fact that counsel for appellant admitted in open court all the question sought to prove; and for the further reason that it could not have effected the result. The evidence complained of in assignment 6 was admissible as a proper explanation by defendant of the "wood transaction," brought into the case by appellant. State v. Baugh, 217 S. W. 281; Edison v. Railway Co., 209 S. W. 577; Sec. 1513, R. S. 1919. (2) There was no error in the giving of instructions numbered 7, 8, 9, 10 and 12 for respondent. Respondent concedes that his instruction numbered 11 was erroneous in that said instruction required plaintiff's wife to have affection for him; in this respondent's instruction numbered 11 was erroneous, but same is harmless error in this cause, there being no dispute on the question of affection. Sec. 1513, R. S. 1919; Fuller v. Robinson, 230 Mo. 50; Beall v. Railway Co., 228 S. W. 837; Liljegren v. Railway Co., 227 S. W. 929; Lester v. Hugley, 230 S. W. 356; Leimbach v. Railway Co., 227 S. W. 849; Lass v. Railway Co., 233 S. W. 71; Lampe v. Railway Company, 232 S. W. 255; DeFord v. Johnson, 152 Mo. App. 209; Scott v. Scott, 16 L. R. A. (N. S.) 742; Lilligren v. Detective Agency, L. R. A. 1917B, 679. (3) The second count of appellant's petition does not declare upon criminal conversation, but declares upon a cause of action for alienation of affections, aggravated by carnal knowledge; and with such debauchery as the means or methods of alienation. There is a marked distinction between actions for alienation of affection and for criminal conversation. DeFord v. Johnson, 152 Mo. App. 209; Scheffler v. Robinson, 159 Mo. App. 527; Merrit v. Cravens, L. R. A. 1917F, 941. The charge made in this case is one that is easily made and hard to disprove. It is not necessary that there be direct testimony upon each issue submitted to the

jury, but both parties have a right to submit to the jury questions of fact that may be inferred as reasonable inferences from the other facts in evidence. Counsel for appellant recognized this rule in securing his requested instruction numbered three. Linden v. McClintock, 187 S. W. 82; Hartpence v. Rogers, 143 Mo. 637. (4) Appellant will be bound in this court by the theory adopted in the trial below. Keele v. Railroad, 258 Mo. 75; Lumber Co. v. Carroll, 255 Mo. 361.

ELDER, J.—The cause of action alleged in the two counts of the petition herein, substantially stated, is that defendant, without the knowledge or consent of plaintiff, did "wrongfully, wantonly and wickedly debauch and carnally know" the wife of plaintiff, "thereby alienating and destroying the affection" which she had for plaintiff, and that defendant "wickedly, wrongfully and maliciously enticed away" the wife of plaintiff, and "has constantly ever since detained and detains and harbors" her against the consent of plaintiff. The answer was a general denial as to both counts. The jury returned a verdict for defendant. From a judgment rendered thereon plaintiff appeals.

The evidence discloses that plaintiff married Ever McCoy in 1915, she being his third wife; that he had a son by a former marriage, and that she had two children by a former marriage, a son and a daughter; that plaintiff and his wife lived together in the town of Cardwell, Dunklin County, Missouri, from the time of their marriage until April 8, 1919; that defendant lived in the same town and was the marshal thereof; that plaintiff was employed in a cotton gin located about three hundred yards distant from his home; that on April 8, 1919, plaintiff's wife left his home and moved to a house in Cardwell owned by defendant.

Mrs. Odell Miller, a witness for plaintiff, testified that from April, 1918, to January, 1919, she lived across the street from plaintiff's home, and saw defendant visit there during plaintiff's absence while his wife was at

home. Describing such visits the witness stated: "When defendant came around early in the morning in his car and honked his car as he turned the corner and go. on, sometimes he would stop, but generally he would stop the car pretty close to the fence and the door would come open and Ever would stick her head out and they would talk a few minutes and then he would go on to town, I suppose—anyhow, it wouldn't be but about thirty minutes until you would see him coming down the railroad, the back way, and he would go in the back way through the woodshed, but of course I couldn't see him go on the back porch; I lived on the corner and I couldn't see his back porch."

Witness further testified that after defendant disappeared from sight in the woodshed she would not see him leaving again sometimes until about noon, and that defendant continued his visits for nine months.

The deposition of Mrs. Tennie Warbritton was offered in evidence on behalf of plaintiff. She testified .that for three years she lived two lots from plaintiff's home; that she saw defendant go there two or three times a week for eighteen months before plaintiff and his wife separated; that she saw defendant "slow down his car and Ever McCoy come to the side door and talk to him a few minutes, and he went on, and in about a half hour he comes back afoot and entered the woodhouse, and saw us watching him, and when my back was turned he begun to run from the woodhouse to the back gallery;" that she saw defendant on one occasion leave the premises and return later "with two packages in his hands and went through the side gate and side door into the house, and that this happened about a week before Mrs. McCoy moved to Hill's house."

The defendant testified that he went to plaintiff's home "once or twice or perhaps three times a week" for the purpose of "meeting the Baker girls who lived the second door from the McCoy home;" that he usually passed plaintiff's home and "would stop and have Mrs.

McCoy to get the girl over there;'' that he ''never did anything to alienate or entice the affections of Ever McCoy from the plaintiff;'' that he never had any improper relations with plaintiff's wife, and that ''the only purpose of his visit to the McCoy home was, to be plain about it, to see Effie Baker;'' that Mrs. McCoy ''didn't kick about it;'' that he never paid Mrs. McCoy ''room rent or anything at that place;'' that he guessed he ''gave the girl some money;'' that he did not know ''whether she settled with Mrs. McCoy or not.'' Defendant admitted that plaintiff's wife moved into a house owned by him, and that he bought a load of wood for her. He testified, however, that she repaid him for the wood.

E. P. Yancey and Mrs. Warbritton testified that they had frequently seen ''the Baker girls'' at plaintiff's home. Several witnesses testified that Minnie and Effie Baker did not have a good reputation for chastity.

Plaintiff testified that he never saw defendant go into his home, but that he had seen him talking to his wife ''at the bank where she had some flowers which she would water during the day;'' that he saw defendant go by his home, ''he would come around and honk his horn and if she didn't come to the door he would keep on going;'' that he and his wife ''lived happily until respondent commenced to come there;'' that he saw defendant ''talking to the Baker girls up town;'' that they visited at his home before he and his wife separated. Asked if he knew the general reputation of Minnie and Effie Baker for morality and chastity, plaintiff replied, ''There is some people that claim them pretty tough and some didn't—I didn't know myself—I never say anything myself.''

The foregoing, in general, outlines the case made. Other facts, as necessary, will be noticed in the course of the opinion.

I. Plaintiff contends that it was error to admit testimony (a) as to the reputation of the Baker girls

for morality and chastity; (b) as to the visits of the Baker girls to the home of plaintiff; (c) as to defendant having been seen talking more frequent-
**Cross-Examination.**
ly to the Baker girls than to plaintiff's wife. As authority for such contention plaintiff cites DeFord v. Johnson, 177 S. W. 577; DeFord v. Johnson, 152 Mo. App. 209, and Scheffler v. Robinson, 159 Mo. App. 527. An examination of the said cases reveals nothing in support of the claim made.

Defendant's answer was a general denial. His defense was that he visited the home of plaintiff not to see plaintiff's wife, but to meet the Baker girls. On direct examination plaintiff testified that "no persons of bad reputation visited them [plaintiff and his wife] while he was present or with his consent," and that he had seen his wife and defendant talking together. The testimony complained of was all elicited upon cross-examination. That portion relating to the reputation of the Baker girls and their having visited at the home of plaintiff went towards controverting the testimony of plaintiff that no persons of bad reputation visited plaintiff and his wife, and tended to affect his credibility. That part relating to defendant having been observed talking more frequently with the Baker girls than with plaintiff's wife tended to explain the comparative degree of intimacy existing between defendant and the Baker girls. In view of the defense interposed, we hold to the view that all of such testimony was properly admitted. The point is ruled against plaintiff.

II. Plaintiff claims that the court erred in permitting plaintiff, on cross-examination, to answer the following question: "Ask you if the treatment of your stepson wasn't the cause of all your trouble and caused her to leave you and file a divorce pe-
**Mistreatment of Step-Children.**
tition in which she made those allega-tions on account of your abusive conduct to your stepchildren she could no longer live with you; isn't that true?" To sustain this contention plain-

tiff cites McKay v. McKay,.192 Mo. App. 221, and De-Ford v. Johnson, 152 Mo. App. 209, neither of which cases have any bearing upon the point raised.

Plaintiff in his petition complained that defendant had alienated his wife's affection, had enticed her away, and had deprived appellant of her comfort, society and assistance. Plaintiff's evidence was directed towards proving such allegations. The question above set forth was aimed to educe a different reason than that alleged for plaintiff's wife leaving him. Manifestly, under the pleadings and the evidence it was within the latitude of cross examination.

III. Plaintiff assigns as error the admission of the following testimony of defendant: "Q. Did she [plaintiff's wife] object in any way to you meeting Effie Baker there? A. Wasn't any objection made." In support of this assignment plaintiff emphasizes the case of Mc-Kay v. McKay, 192 Mo. App. 221, which but lays down the rule that one spouse is not competent to testify for or against the other in the latter's suit for alienation of affections. Clearly, such ruling has no application here.

Meeting Girl at Plaintiff's House.

A reference to the record shows that immediately preceding the testimony objected to, defendant had testified, without objection, that Mrs. McCoy was in charge of the McCoy home when he would go there to meet Effie Baker. Upon the objectionable question being put, counsel for plaintiff interjected: "We are admitting that we never contended he went in there forcibly." The answer given by the witness was entirely consonant with the admission made by counsel and the question itself was in keeping with the defense being urged. Under the circumstances we fail to see wherein plaintiff was prejudiced. The contention is ruled adversely to plaintiff.

IV. Plaintiff urges that the court erred in permitting defendant to testify as to what plaintiff's wife said with

respect to paying for the load of wood delivered to her

**Hearsay.** after she moved to the house owned by defend-
ant. An examination of the record discloses
that in presenting his case in chief plaintiff offered the
witness Pitts who testified, on direct examination, with
respect to having sold a load of wood to defendant and
having delivered the same "at the place Mrs. McCoy was
living and Mr. Hill paid me for it." Plaintiff having
introduced testimony of this character it was proper for
defendant to reply thereto in explanation of the part he
played in the transaction. While we do not give sanction
to any encroachment upon the rule against the admission
of hearsay evidence, nevertheless, in the instant case
we do not think plaintiff was sufficiently prejudiced by
the testimony admitted to warrant our reversing the
judgment or remanding the cause upon that ground.

We therefore overrule the claim of error urged.

V. Coming to one of the serious errors assigned,
plaintiff insists that Instructions 7 and 8 given on behalf
of defendant constitute reversible error.

Instruction 7 told the jury that if they found from
the evidence that "prior to the separation of plaintiff
and his wife, Ever McCoy, the said Ever McCoy as-
sociated with and appeared in public with women whose

**Instruction:
Debauching
Wife.** reputation in said community for morality
and chastity was bad," and that such as-
sociation and public appearance, if the jury
found it existed, was with the knowledge
and consent of plaintiff, and if they further found that
the home of plaintiff and his wife "was a common meeting
place of prostitutes and men of disrepute," and that such
fact, if the jury found it existed, was with the knowledge
and acquiescence and consent of plaintiff, then their
verdict must be for the defendant. Instruction 8 is a
counterpart of Instruction 7 with the exception that the
time was laid "prior to the beginning of any visits of
defendant to the home of plaintiff" instead of "prior to
the separation of plaintiff and his wife." The complaint

lodged against these instructions is that they contain a comment upon the evidence, assume the existence of facts not in evidence, do not include the ultimate facts, and are not based upon any facts which would constitute a defense to the issues made.

The evidence tended to show that the reputation of "the Baker girls" for chastity was bad. Practically every witness so testified. There was evidence that the Baker girls visited plaintiff's home frequently. P. P. Yancey, who lived "just across the street north from plaintiff," testified that he saw them "visiting over there frequently." Mrs. P. P. Yancey upon being asked, "Did the Baker girls visit the McCoy home oftener than they visited other homes around in the neighborhood?" testified, "Yes sir, they did." Mrs. Tennie Warbritton, who lived in plain view of plaintiff's home, testified that she had seen "the Baker girls go there pretty often." Plaintiff testified that the Baker girls visited at his home before he and his wife separated, "and had been for the last twelve or fourteen years," and that "they had exchanged visits for several years."

P. P. Yancey testified that "he saw other men there, there was a peddler, either a doctor or selling some kind of medicine;" that he "told Ed Hill that he had seen men there." Mrs. P. P. Yancey testified that she had seen a doctor who she named, "go there a good many times; that I didn't know he had any particular business there. . . . There was a picture man come to this town. I didn't know his name, but he visited there quite often while he was here. And then there was a medicine peddler that visited there a right smart." Mrs. Warbritton testified that "a man once went in there and the shades were pulled down and the children went out to play and the man stayed a while and went out the side door. . . . The Baker girls were there on the occasion when this other man called, and Mrs. McCoy swept the porch and then went back into the house and pulled the shades down. This happened in the summer

McCoy v. Hill.

before Mrs. McCoy moved the next April.'' Defendant testified that ''the only purpose of his visits to the McCoy home was, to be plain about it, to see Effie Baker;'' that plaintiff's wife ''was in charge of the McCoy home'' when he would go there to meet Miss Baker; that he went there ''once or twice or perhaps three times a week for as much as twelve months.''

This evidence, considered as a whole, probably offered sufficient justification for the submission to the jury of the issues presented by defendant's instructions. However, the instructions declare in effect, as a matter of law, that if plaintiff's wife associated with women of bad reputation, as to chastity, and if plaintiff's home was a common meeting place of disreputable persons, then the verdict must be for defendant. This, regardless of the question of whether or not respondent debauched plaintiff's wife, or alienated her affections, or enticed her away. Such is not the law. Even though plaintiff's wife may have not only associated with dissolute women, but had been actually immoral herself (of which there is no direct proof), if respondent was guilty of debauching her without plaintiff's acquiescence he can be held to respond in substantial damages. As said in Scheffler v. Robinson, 159 Mo. App. l. c. 536:

''To hold that he could recover only nominal damages if his wife secretly had been immoral with other men and was not seduced by defendant would be a most pernicious doctrine. No man has the right to invade the home of another and if he does, he cannot find excuse in the fact that he is not the only sinner. The only issue in a case of criminal conversation is whether or not the defendant was guilty of adultery with the wife of plaintiff without the consent of the latter.''

It is argued, however, that plaintiff tried and submitted his case upon the theory that it was an alienation of affection suit and not one for criminal conversation. The evidence adduced and the instructions requested and given on behalf of plaintiff would seem to somewhat so imply. But be that as it may, defendant's Instructions

7 and 8 are inconsistent with plaintiff's Instructions 1 and 3. Plaintiff's instruction numbered 1 told the jury that if they found that defendant "did carnally know and debauch said Ever McCoy, and thereby did alienate the affections of said Ever McCoy from the plaintiff, and if you further find that the plaintiff was deprived of the society, comfort and assistance of his wife, said Ever McCoy, by the said conduct of the defendant, then your verdict will be for the plaintiff." Plaintiff's instruction numbered 3 laid down the principle that a husband is entitled to the society, comfort and assistance of his wife and then told the jury that if they believed from the evidence that defendant "was intentionally guilty of such conduct as was calculated to prejudice plaintiff's wife against him, and to alienate her from him and to induce her to leave him, and that such effect was intended by the defendant to be produced, and was actually produced by his conduct," then they should find for plaintiff. The said two instructions announce an entirely different doctrine than that declared by defendant's Instructions 7 and 8. Plaintiff's instructions pronounce the theory upon which defendant should be held liable. Defendant's instructions hypothesize a state of facts under which defendant should be exculpated. The theory enunciated thereby, however, is wholly disconnected with, and constitutes no defense to, the proposition presented by plaintiff's instructions. Defendant's instructions within and of themselves alone authorized a verdict upon facts not an issue in the case. Nor can it be said that all of the instructions, when taken as a whole, cured the error for the reason that they do not harmonize and are confusing. As said in Modisett v. McPike, 74 Mo. l. c. 648, with respect to instructions in some ways analogous to those before us, "each instruction must be correct in itself; all must be consistent with each other, and the whole taken together must present but one doctrine."

For the reasons appearing, we must therefore rule the point in favor of plaintiff.

VI. Plaintiff contends that defendant's Instruction 11 was erroneous. · Such instruction told the jury that to entitle plaintiff to recover he must prove by the greater weight of all the credible evidence "that the plaintiff's wife had an infatuation for the defend-

Infatuation: Criminal Conversation: Burden of Proof.

ant Hill; that the defendant by willful and intentional wrong was the cause of such infatuation; that plaintiff's wife had affection for plaintiff, her husband; that defendant was the enticer of plaintiff's said wife · and that he enticed her and thereby destroyed her affection." The said instruction further told the jury that mere proof that plaintiff's wife "had improper relations with defendant is not sufficient to entitle plaintiff to recover." Said instruction placed the burden upon plaintiff of proving that his wife had affection for him. This has been held by this court to constitute error. [DeFord v. Johnson, 177 S. W. l. c. 585.] While the instant case seems to have been tried as an action for alienation of affections, it is urged throughout plaintiff's brief that it was also submitted as an action for criminal conversation. If that be true, then the announcement contained in Instruction 11 that mere proof that plaintiff's wife had improper relations with defendant would not entitle plaintiff to recover is beyond question erroneous. Also, the requirement that the jury find that plaintiff's wife had an "infatuation" for defendant imposed a greater burden upon plaintiff than the law exacts. The term "infatuation" was inferentially criticised, when used in an instruction, in DeFord v. Johnson, 177 S. W. l. c. 585. It implies being inspired with a foolish and extravagant passion. Alienation of affections does not necessarily contemplate that extreme in the emotions of the person allured.

We accordingly hold that the instruction was improper.

VII. Other instructions given on behalf of defendant are also complained of. While the jury may have ar-

rived at a proper verdict upon the evidence adduced, nevertheless, they could easily have been misled or confused by defendant's Instructions 7, 8 and 11 adverted to supra. Therefore, in view of the errors contained in said instructions, it becomes necessary to reverse the judgment and remand the cause for a new trial. Other errors, if any exist, can then be obviated.

Let the judgment be reversed and the cause remanded. *Graves, P. J.,* and *Woodson, J.,* concur; *James T. Blair, J.,* concurs in result.